2023 IL App (4th) 230467-U

NOS. 4-23-0467, 4-23-0468, 4-23-0469, 4-23-0470 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 19, 2023
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* L.C., C.C., T.V., and R.V., Minors | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Hancock County |
| Petitioner-Appellee, | ) Nos. 19JA33 |
| v. | ) 19JA34 |
| Brooklyn C., | ) 19JA35 |
| Respondent-Appellant.) | ) 20JA6 |
| | ) |
| | ) Honorable |
| | ) Rodney G. Clark, |
| | ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in finding that termination of respondent's parental rights would be in the minors' best interests.

¶ 2    Respondent, Brooklyn C., appeals the trial court's order terminating her parental rights to her minor children, L.C. (born in 2013), C.C. (born in 2017), T.V. (born in 2018), and R.V. (born in 2020). Respondent argues the court's best interests determination was against the manifest weight of the evidence. We affirm.

¶ 3    I. BACKGROUND

¶ 4    A. Case Opening

¶ 5    On October 2, 2019, the State filed petitions seeking to adjudicate L.C., C.C., and T.V. neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS

405/2-3(1)(b) (West 2018)). That same day, the trial court entered an order placing temporary custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 6 The State then filed amended petitions on January 22, 2020, alleging the minors were neglected based on their injurious environment due to (1) instances of domestic violence between respondent and Kristopher V., who is not a party to this appeal and (2) respondent's failure to adequately supervise L.C. by failing to pick him up from school on September 26, 2019. That same day, respondent admitted the allegations contained in the amended petition. The trial court adjudicated the minors neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2018)). The court made the minors wards of the court and continued their guardianship and custody with DCFS.

¶ 7 On February 18, 2020, the State filed a petition for adjudication of wardship in Adams County case No. 20-JA-24 regarding R.V., who was born during the pendency of L.C.'s, C.C.'s, and T.V.'s cases. That same day, the trial court entered an order placing temporary custody and guardianship with DCFS. The State again filed an amended petition on March 5, 2020, which alleged R.V. was in an environment injurious to her welfare in that (1) respondent's three older children were not in her care and respondent has "made little progress in having [her] older three *** children returned to [her]" and (2) during her pregnancy with R.V., respondent tested positive for amphetamines. The case was transferred to Hancock County on June 16, 2020. Respondent admitted the allegations in the amended petition on September 17, 2020, and the court adjudicated R.V. neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2020)). The court made R.V. a ward of the court and continued her guardianship and custody with DCFS.

¶ 8	On June 21, 2022, the trial court changed the permanency goal to substitute care pending termination of respondent's parental rights, and the State filed petitions to terminate respondent's parental rights regarding L.C., C.C., T.V., and R.V. The petitions alleged respondent was an unfit parent in that (1) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from her care during a nine-month period after the minors were adjudicated neglected, namely, the periods of December 16, 2020, to September 15, 2021, and September 16, 2021, to June 15, 2022 (750 ILCS 50/1 (D)(m)(i) (West 2022)) and (2) she failed to make reasonable progress toward the return of the minors to her care during a nine-month period after the minors were adjudicated neglected, namely, the period of December 16, 2020, to September 15, 2021, and September 16, 2021, to June 15, 2022 (750 ILCS 50/1 (D)(m)(ii) (West 2022)). Prior to the fitness hearing, Nicholas T., L.C.'s father, surrendered his parental rights on January 13, 2023, and he is not a party to this appeal. In January 2023, after a hearing on the State's petitions, the court found respondent unfit for failing to make reasonable progress during the time periods of December 16, 2020, to September 15, 2021, and September 16, 2021, to June 15, 2022.

¶ 9	B. Best Interests Hearing

¶ 10	The trial court conducted the best interests hearing on April 25, 2023. At the time of the hearing, L.C. was nine years old, C.C. was five years old, T.V. was four years old, and R.V. was three years old. The best interests report was admitted without objection. The report noted respondent had "periods of stable and unstable housing and employment" throughout the life of the case. Additionally, the minors had been placed with their maternal step-grandparents since the cases' openings. The foster parents ensured the minors' physical and emotional needs were met. The authors of the best interests report observed the minors were well bonded to foster

parents Collin C. and Tina C. Although respondent had "recently taken some steps in the right direction, she ha[d] yet to demonstrate progress or maintenance of better choices." The authors of the best interests report noted L.C. "had significant struggles with the unknown of what his permanency will be."

¶ 11 Bethany Greenwood, a child welfare specialist assigned to the case, testified L.C., C.C., and T.V. had been in foster care since September 30, 2019, and R.V. had been in foster care since February 14, 2020. She opined respondent was unable to "provide for the physical safety and welfare" of the minors. Greenwood testified that respondent was currently living with her mother in Burnside. Greenwood was unable to provide an assessment of respondent's mother's home because she had "only been in the living room." On cross-examination, Greenwood admitted, "From what I saw [the home] did appear appropriate."

¶ 12 Regarding foster parents Collin and Tina, Greenwood stated she had no concerns about their ability to provide for the minors' physical safety and welfare. Greenwood indicated Collin and Tina's home was clean and appropriate. The minors felt loved and valued by Collin and Tina, and the minors sought out the foster parents when "they are needing something. They're not afraid to ask for help." Greenwood noted on one occasion during a visit between respondent and the minors, T.V. "expressed that she wanted to go to grandma's on *** two or three occasions. *** [W]hen Tina and Collin showed up after the visit ended, the children were very happy to see them." In Greenwood's opinion, Collin and Tina's home would be the least disruptive placement for the minors.

¶ 13 Greenwood acknowledged L.C. "expressed that he would like to go live with [respondent]; however, he struggles with understanding why he came into care, including *** different safety concerns that arose, which led him to come into care." However, when

- 4 -

Greenwood asked L.C. "what it would look like living with [Collin and Tina] permanently, he expressed that it would be all right [*sic*]." L.C. then proceeded "to share *** different things that he hopes he can do, like, going to the pool, continuing to play baseball, and just getting involved in other sports."

¶ 14 Lori Waddell testified she was the court-appointed special advocate assigned to the case. In her opinion, Collin and Tina's home was the least disruptive placement for the minors. On cross-examination, Waddell acknowledged the COVID-19 pandemic affected respondent's ability to bond with the minors. However, on redirect examination, when asked about respondent's relationship with all four minors, Waddell testified respondent and L.C. had "a stronger bond" that, in her opinion, was unaffected by the COVID-19 pandemic.

¶ 15 Tina testified L.C., C.C., and T.V. had been in her care since 2019 and R.V. had been in her care since R.V.'s birth. For the past three and a half years, Tina had been a stay-at-home mother in order to best tend to the minors' needs. Tina indicated once R.V. is old enough to enroll in school, she intended to seek remote employment. Further, Tina testified she and Collin wished to provide permanency for the minors and had completed adoption classes.

¶ 16 Respondent testified she was employed full-time and currently resided with her mother, her mother's fiancé, and her sister, Allison, in Burnside, Illinois. Respondent indicated she paid rent to her mother and the home was appropriate for the minors. At the time of the best interests hearing, she had completed "all of the required services" and was still attending counseling sessions "on [her] own accord." Respondent noted her residence was in the minors' school district; therefore, she opined the transition into her care would be "seamless." Further, the minors were well bonded with respondent's mother and Allison.

¶ 17 Following closing arguments, the trial court took the matter under advisement.

¶ 18          The trial court issued its written order on May 3, 2023. At the outset, the court noted all four minors had been in their current placement for "over 1100 days." While the court acknowledged "[t]here is no doubt *** that both parents love the children" and respondent desired to maintain the parent-child relationship with the minors, that "desire cannot be the focus at this stage of the proceedings." The court observed that the minors had been placed with Collin and Tina for over three years and were bonded with them. Collin and Tina provided a sense of love and stability and met the minors' emotional and physical needs. The court further highlighted the minors' ties to the community Collin and Tina resided in and their ability to "maintain those ties" in their current placement. The court concluded, "[b]ased on the factors and the evidence of the case," it was in the minors' best interests that respondent's parental rights be terminated.

¶ 19          On May 23, 2023, respondent filed a timely notice of appeal. This court docketed respondent's appeals in Hancock County case No. 19-JA-33 as appellate court case No. 4-23-0467 (L.C.'s case), Hancock County case No. 19-JA-34 as appellate court case No. 4-23-0468 (C.C.'s case), Hancock County case No. 19-JA-35 as appellate court case No. 4-23-0469 (T.V.'s case), and Hancock County case No. 20-JA-6 as appellate court case No. 4-23-0470 (R.V.'s case). On July 26, 2023, this court granted respondent's motion to consolidate the appeals.

¶ 20          This appeal followed.

¶ 21                              II. ANALYSIS

¶ 22          On appeal, respondent challenges only the trial court's best interests finding, arguing it was against the manifest weight of the evidence. We disagree.

¶ 23 Following a finding of parental unfitness, the trial court's focus shifts away from the parents, and the court gives full and serious consideration to the minors' best interests. *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). At the best interests stage of termination proceedings, the State must prove by a preponderance of the evidence that termination is in the minors' best interests. *In re D.T.*, 212 Ill. 2d 347, 366 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. In making the best interests determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination need not contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 24    A reviewing court will not disturb a trial court's finding that termination is in the minors' best interests unless it was against the manifest weight of the evidence. *T.A.*, 359 Ill. App. 3d at 961.

¶ 25    At the time of the best interests hearing, the minors had been living together with Collin and Tina for over three years. The minors were well bonded with Collin and Tina, and they were able to provide for the minors' physical and emotional needs. According to her testimony, Tina quit her job to become a stay-at-home mother for the minors in order to best accommodate their needs. Collin and Tina agreed to provide permanence for the minors and had completed adoption classes in preparation for such. Greenwood and Waddell testified Collin and Tina would be the least disruptive placement for the minors. Moreover, the best interests report noted the minors were thriving in their current placement. Further, the best interests report highlighted the stability provided by Collin and Tina. Specifically, regarding L.C., the current placement "is the most stable and consistent living environment he has experienced throughout his life." The minors deserve a permanent, stable, safe, and loving environment. According to the evidence, Collin and Tina provided those things. In its written order, the trial court concluded, "These children deserve to know they have a home they can count on."

¶ 26    Based on the evidence presented and in light of the statutory factors carefully considered by the trial court, we conclude the court's decision that it was in the minors' best interests to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 27                            III. CONCLUSION

¶ 28    For the reasons stated, we affirm the trial court's judgment.

¶ 29    Affirmed.